EZZARD *et al. vs.* THE FINDLEY GOLD MINING COMPANY.

One who has title to the gold and ore embedded in land, with the right to enter thereon and to use the water in a stream running through the premises, to enable him to mine the ore, cannot maintain ejectment against an adjacent proprietor lower down the stream, who has erected a dam across it, by which the water is thrown back and submerges the land on which the mining right is situated, preventing and hindering the owner from making use of his property. He has a remedy by an action on the case, but not by ejectment.

(*a.*) It is not decided that the owner of land covered with water, or of the mineral interest in such land, when either is held adversely, may not maintain ejectment for the recovery thereof. Such is not the case here.

February 24, 1885.

Ejectment. Title. Actions. Damages. Water Courses. Before Judge BROWN. Lumpkin Superior Court. October Term, 1884.

Reported in the decision.

WM. EZZARD, *in propria persona;* HENRY B. TOMPKINS, for plaintiff in error..

W. P. PRICE; R. H. BAKER, for defendant.

HALL, Justice.

The question made in this case is, whether the lessor of the plaintiff, who has title to the gold and ore embedded in the land in question, with the right to enter thereon, and to the use of the water in the stream running through the premises, to enable him to mine the ore, can maintain

ejectment against an adjacent proprietor lower down the stream, who has erected a dam across the same, by which the water is thrown back and submerges the land on which the mining right is situated, and by means of which the owner is prevented and hindered from making use of his property? The court below was at first of opinion that the action was proper, and refused a motion to non-suit, but subsequently, when a verdict had been returned for the plaintiff with mesne profits, and a motion was made for a new trial, upon various grounds, including the refusal to award a non-suit, the verdict was set aside and a new trial was ordered. Exception was taken to this judgment, and the case is here upon that exception for review.

We are of opinion that the non-suit should have been awarded, and having refused it, and a verdict having been rendered for the plaintiff, the court was right to correct the error by setting it aside and ordering another hearing. If the rights of the plaintiff were invaded by covering the land with the water backed in consequence of the defendants having erected his dam across the stream, and thus causing water to overflow the land in which the plaintiff had an interest, he was not without his remedy. In all cases of consequential damages, or " such as do not follow immediately upon the act done," but " are the necessary and connected effect " of the same, " though to some extent depending upon other circumstances" (Code, §3071), the party wronged has his remedy, and that remedy is an action on the case as contradistinguished from trespass. The cases and authorities showing the damages claimed here to be consequential, and declaring case the proper remedy to redress the injury, are collected and arranged in Angell on Water Courses, §§395, 396, 397, and 6 Wait's Act. and Def., 312, 313.

A resort to an action of ejectment to vindicate such a wrong would seem, to employ the quaint but expressive language of Lord Coke, " to be a mere stranger in the law." The only analogous case which gives countenance to such

a proceeding is Sherry *vs.* Frecking, 4 Duer's R., 457, where it was held that the owner might recover in ejectment the space above his land, as when an adjoining building overhung it.   This decision was put upon the principle that the common law signification of land embraced all above and below it to an indefinite extent (a definition which has been carried into our Code, §2218).   It misapplied, however, as we conceive, a correct principle, and was expressly overruled in a later case by the Supreme Court of New York, in which state it was rendered. (Aiken *vs.* Benedict, 39 Barb. R., 400).   According to the justice who delivered the opinion in this case, this is the only instance which the books furnish where ejectment was sustained under like circumstances, either in England or the United States.   It is further said, "The point appears by the report of the case to have been decided with little or no consideration, and without referring to a single authority to show that ejectment would lie.   The court admit that the claim is a novel one, but remark that they do not see why it is not well founded, or why, if A builds óver, though not upon, B's land, B may not have his remedy by ejectment."   But the Supreme Court did not so see it, and held that such a projection over the land of another was not such an encroachment upon his possession as would sustain an action of ejectment.   And Mr. Tyler, On Ejectment, p. 38) deems the latter decision " more in harmony with the general principles of the action to recover possession of realty than the former," and thinks it may be regarded as the better law.   And such is our own opinion; indeed, we do not clearly see how the sheriff could execute the writ of *habere facias possessionem*, which the judgment in favor of the plaintiff in ejectment awards, by removing the water from the premises and by putting the plaintiff in possession.   He cannot remove the defendant, for he has never been in possession, and by his plea disclaims any right thereto.   Besides, although the plaintiff may recover the rents of the land along

with the possession, and any damages done to his freehold in connection with its wrongful use, yet, apart from these rents, he can recover no damages disconnected from them. **19** *Ga.*, 583.

To avoid misapprehension as to the extent of this decision, it may be well to state that we do not hold that the owner of land covered with water, or of the mineral interest in such land, when either is held adversely, may not maintain ejectment for the recovery thereof. This is not the case before us.

Judgment affirmed.